**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 24-423 (MAS) |
| RANDY HAYWARD | **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Randy Hayward's ("Defendant") Omnibus Pre-trial Motion (the "Motion"). (ECF No. 26.) The Government opposed (ECF No. 27) and Defendant replied (ECF No. 29). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1. For the reasons below, Defendant's Motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Background

On January 2, 2024, at around 1:30 a.m., two South Toms River Police Officers, Officer Caprara and Officer Hill (collectively, the "Officers"), were dispatched to Victim-1's residence in South Toms River in response to a 911 call. (Def.'s Moving Br. 7, ECF No. 26-1; Gov't's Opp'n Br. 3, ECF No. 27.) According to the Government, upon arriving at the scene, the Officers were aware of an incident reported by Victim-1 approximately one week prior that involved Defendant arriving at Victim-1's residence with and displaying a firearm and later sending Victim-1 threatening text messages. (Gov't's Opp'n Br. 3 (citing Ex. C (redacted police report dated Dec. 28, 2023)).) When the Officers arrived, they observed a running vehicle parked on the street and

Defendant standing outside the driver's side of that vehicle smoking a cigarette. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 3 (citing Exs. A1 at 01:35:25, B[1] at 01:35:35).)

The Officers approached Defendant and informed him that they were dispatched to a nearby home after receiving a report of a disturbance involving a man attempting to gain entry to a residence. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 3.) During the conversation, Officer Caprara asked Defendant if they could pat him down for weapons, but Defendant refused and denied possession of any weapons. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 3-4 (citing Ex. A1 at 01:36:00, 01:36:10-40:40 and Ex. B at 01:35:50, 01:36:00-40:40).) Officer Hill then spoke to Victim-1 who identified Defendant as the individual who was banging on the door and threatening to force his way inside. (Gov't's Opp'n Br. 4 (citing Ex. B at 01:40:40-43:00).) The Officers once again asked Defendant if they could pat him down, but Defendant refused and took off his jacket. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 4 (citing Ex. A1 at 01:43:30).) As the Officers moved closer to Defendant, Defendant fled with his jacket in his hands. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 4 (citing Ex. A1 at 01:44:05 and Ex. B at 01:43:55).)

After pursuing Defendant, the Officers apprehended Defendant, tackling him to the ground and handcuffing him. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 4-5 (citing Ex. A1 at 01:44:05-30 and Ex. B at 01:43:55-44:20).) While being handcuffed, an item, which the Government contends was Defendant's jacket, was under Defendant's body. (Gov't's Opp'n Br. 4-5 (citing Ex. A1 at 01:44:30 and Ex. B at 01:44:20).) After the arrest, Officer Caprara lifted the item and moved it to a nearby yard. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 4-5.) Officer Hill walked Defendant to her

_____

[1] The Government submits video exhibits with its opposition, including videos of the body worn camera (the "BWC") footage of Officer Caprara (Exs. A1 and A2) and the BWC footage of Officer Hill (Ex. B). (*See* Gov't's Opp'n Br. 3 (discussing Exs. A1, A2, and B).)

police vehicle. (Def.'s Moving Br. 7; Gov't's Opp'n Br. 5 (citing Ex. A2 at 01:45-48 and Ex. B at 01:45-48).)

Shortly thereafter, Officer Caprara picked up and searched the article of clothing that the Government contends was Defendant's jacket. (Def.'s Moving Br. 8; Gov't's Opp'n Br. 5 (citing Ex. A2 at 01:50:55 and Ex. B at 01:50:45).) Officer Caprara found a loaded black and silver Diamondhead .380 caliber pistol, bearing serial number ZM1479 inside a pocket of the clothing. (Def.'s Moving Br. 8; Gov't's Opp'n Br. 5 (citing Ex. A2 at 01:50:55-51:20 and Ex. B 01:50:45-55:10).) In removing the gun from the clothing, Officer Caprara stated "he's got a firearm[.]" (Def.'s Moving Br. 8.) Thereafter, Officer Caprara read Defendant his *Miranda* rights while Defendant was secured in the police vehicle. (Gov't's Opp'n Br. 5 (citing Ex. A2 at 01:52:45 and Ex. B 01:52:35).) Defendant waived his rights and admitted that he purchased the firearm "off the street" in Jersey City. (Gov't's Opp'n Br. 5 (citing Ex. A2 at 01:52:35 and Ex. B 01:52:55).)

According to Defendant, Officer Caprara "had a troubled and short tenure as a police officer" and was "terminated for cause . . . for using racial slurs, for failing to tell the truth[,] and for a lack of integrity during an investigation." (Def.'s Moving Br. 8.) Officer Caprara died in September 2024, and as a result, the late officer cannot testify at trial. (*Id.*)

**B.    Procedural Background**

On March 13, 2024, an arrest warrant was issued for Defendant and Defendant was charged with violating 18 U.S.C. § 922(g)(1). (*Id.*; *see generally* Compl., ECF No. 1.) Defendant was indicted on June 27, 2024. (*See generally* Indictment, ECF No. 14.) Defendant was arraigned and pleaded not guilty on August 12, 2024. (Arraignment Min. Entry, ECF No. 17.) On November 14, 2025, Defendant filed the instant Motion. (Def.'s Omnibus Mot., ECF No. 26.) The Government opposed (Gov't's Opp'n Br.) and Defendant replied (Def.'s Reply Br., ECF No. 29).

3

## II.    ANALYSIS

In bringing the instant Motion, Defendant seeks an order providing for: (1) suppression of Officer Caprara's BWC footage ("Request One"); (2) suppression of the firearm purportedly found by police ("Request Two"); (3) the Government to describe any evidence covered by Federal Rule of Evidence 404(b)[2] that it intends to introduce at trial ("Request Three"); (4) discovery from the Government of all exculpatory evidence, "including personnel records and certain identified additional documents and videos" ("Request Four"); (5) the Government's disclosure of relevant information concerning witnesses, informants, and cooperators ("Request Five"); (6) the Government's production of all statements of Defendant and all expert reports and tests pursuant to Federal Rule of Criminal Procedure 16(a)[3] ("Request Six"); (7) the Government's production of Jencks Act materials thirty days in advance of trial ("Request Seven"); (8) the Government's preservation of rough notes created in the course of its investigation ("Request Eight"); and (9) Defendant's ability to make further pre-trial motions as necessary ("Request Nine"). (*See generally* Def.'s Moving Br.) The Court addresses each Request and arguments related thereto below.

### A.    Defendant's Motion to Suppress BWC Footage (Request One)

Defendant moves to suppress Officer Caprara's BWC footage, arguing that the footage is inadmissible for two reasons: (1) the Government cannot authenticate Officer Caprara's BWC footage in its entirety under Rule 901 and authentication is required for admissibility; and (2) the presentation of this evidence at trial would violate Defendant's rights pursuant to the Confrontation Clause of the Sixth Amendment. (*See id.* at 9-13.) The Court addresses each argument in turn.

---

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Evidence.

[3] All references to "Criminal Rule" or "Criminal Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

4

### *1.    Authentication*

Pursuant to Rule 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Evidence can be authenticated through multiples avenues. *See* Fed. R. Evid. 901(b) (providing examples of how evidence can be authenticated and/or identified). The Third Circuit has acknowledged the "minimal requirements" under Rule 901 and has "repeatedly noted that '[t]he burden of proof for authentication is slight.'" *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) (alteration in original) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)).

Here, Defendant argues that "the BWC footage cannot be authenticated at trial by a person with knowledge of all parts of the recording, as that person would have been Officer Caprara, the technical camera operator" and "[t]here are no other witnesses who can authenticate the entire video nor its most crucial element, the alleged recovery of the firearm." (Def.'s Moving Br. 10.) In opposition, the Government contends that "Officer Hill can authenticate the footage based on her personal observations" and, independently, the BWC footage can be authenticated through its chain of custody. (Gov't's Opp'n Br. 6-8.)

As noted by the Government, "Officer Hill was present for all but a brief portion of the events depicted on Officer Caprara's BWC and can testify that the footage accurately reflects what occurred that night." (*Id.* at 7.) Although Officer Hill was not present for the entirety of the footage that Officer Caprara's BWC filmed, Officer Hill can still provide testimony that the BWC footage "is what it is claimed to be." Fed. R. Evid. 901(b); *see also United States v. Emas*, No. ACM 40020, 2022 WL 2231244, at *13-14 (A.F. Ct. Crim. App. June 21, 2022) (finding BWC footage

was authenticated under the Military Rules of Evidence[4] where testimony from an officer was "sufficient to establish that the recording from [another officer's BWC] was what it was claimed to be" where the testifying officer attested that he was with the officer wearing the BWC for "the entire time . . . except for a few brief moments"); *United States v. Abass*, No. 25-79, 2025 WL 3141001, at *1 (D.D.C. Nov. 10, 2025) (noting that police officer "authenticated the body-worn camera footage of [other police officers]" during evidentiary hearings held on a motion to suppress).

Moreover, as the Government also argues, it can authenticate Officer Caprara's BWC footage through its chain of custody. (Gov't's Opp'n Br. 7-8.) "'Establishing a chain of custody is [another] form of proof sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Rawlins*, 606 F.3d 73, 82 (3d. Cir. 2010) (quoting *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984)). "To establish a chain of custody sufficient to make evidence admissible, the proponent 'need only prove a rational basis from which to conclude' that the evidence is what the party claims it to be." *Id.* (citation omitted). Put differently, "the prosecution must offer sufficient 'evidence from which the trier [of fact] could reasonably believe that an item is what the [prosecution] claims it to be.'" *Id.* (first alteration in original) (quoting *United States v. Mejia*, 597 F.3d 1329, 1336 (D.C. Cir. 2010)). The Third Circuit has "long rejected the proposition that evidence may only be admitted if a 'complete and exclusive' chain of custody is established." *Id.* (quoting *United States v. De Larosa*, 450 F.2d 1057, 1068 (3d Cir. 1971)). The Government represents that it "expects that, at trial, a custodian or series of

---

[4] Military Rule of Evidence 901(a) is analogous to Rule 901(a), and provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Mil. R. Evid. 901(a).

6

custodians could attest to the receipt and intake of the digital BWC footage from Officer Caprara and the chain of custody thereafter." (Gov't's Opp'n Br. 8.) If presented at trial, that testimony would be sufficient for the Government to meet its "slight" burden to authenticate the evidence. *See Lexington Ins. Co.*, 423 F.3d at 328 (citation omitted).

The Court therefore rejects Defendant's argument that Officer Caprara's BWC footage must be suppressed on the grounds that the Government cannot properly authenticate the evidence.

### 2.    *Confrontation Clause*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

> To fall within the ambit of the Confrontation Clause, proposed evidence must constitute a "statement," and such a statement must contain testimonial hearsay, meaning that the statement was "a 'solemn declaration or affirmation made for the purpose of establishing or providing some fact;' and . . . was made primarily for the purpose of 'prov[ing] past events potentially relevant to later criminal prosecution.'"

*United States v. Gonzalez*, 905 F.3d 165, 201 (3d Cir. 2018) (citations omitted). Under the Sixth Amendment, testimonial hearsay may not be introduced against a defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). "[T]he admissibility of a [nontestimonial hearsay] statement[, however] is the concern of state and federal rules of evidence, not the Confrontation Clause." *Michigan v. Bryant*, 562 U.S. 344, 359 (2011).

7

As articulated in *Davis*,

> [s]tatements are nontestimonial when made . . . under circumstances objectively indicating that the primary purpose . . . is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). To make a determination of whether statements are testimonial or nontestimonial in nature, courts must perform "[a]n objective analysis of the circumstances of an encounter and the statements and actions of the parties to it" in order to provide "the most accurate assessment of" the primary purpose of the statements made. *Michigan*, 562 U.S. at 360.

Defendant argues that Officer Caprara's statements that were captured by his BWC footage were "intended to be used in litigation" and are "testimonial" such that "playing [Officer Caprara's BWC footage] at trial absent the opportunity for cross-examination of the now[-]deceased officer violates [Defendant's] rights under the Confrontation Clause." (Def.'s Moving Br. 12-13.) In opposition, the Government argues that Officer Caprara's statements are not barred by the Confrontation Clause as they "were not 'testimonial hearsay'" because the circumstances surrounding Officer Caprara's statements captured in his BWC footage "objectively indicate that the 'primary purpose' of Officer Caprara's statements, as recorded on the BWC footage, at least through 1:51:20 [a].m., was 'to enable police assistance to meet an ongoing emergency.'" (Gov't's Opp'n Br. 8-14 (citations omitted).)

As an initial matter, and as the Government points out, Defendant forgoes a nuanced argument about exclusion of specific portions of Officer Caprara's BWC footage and instead summarily argues that the entire footage should be suppressed. (*See* Gov't's Opp'n Br. 8 n.2; Def.'s Moving Br. 11-13.) Defendant has provided no authority to support suppression of the BWC

8

footage in its entirety due to a discrete line (or even a few lines) of dialogue—which Defendant fails to even identify with specificity—within the video itself. (*See generally* Def.'s Moving Br.) The Government, however, has represented that it expects to introduce at trial two clips from Officer's Caprara's BWC footage: (1) "Officer Caprara's statements that precede or immediately follow his discovery of the firearm in [Defendant's] jacket" (Exs. A1-A2 at 01:35-51:20) ("Segment One"); and (2) "Officer Caprara's questions of and statements to [Defendant] during the on-scene interrogation" (Ex. A2 at 01:52:35-53:50) ("Segment Two"). (Gov't's Opp'n Br. 8 n.2.) Moreover, the Government states that it will not otherwise seek to introduce Officer Caprara's statements that would be in violation of the Confrontation Clause. (*Id.* at 14 n.3.) As such, the Court focuses its below analysis on the two segments identified by the Government.

### a.    Segment One

In objectively analyzing the circumstances surrounding Officer Caprara's statements in Segment One, the Court finds that Defendant has failed to establish that Officer Caprara's statements were testimonial in nature. Specifically, the circumstances here show that: (1) the Officers responded to Victim-1's house after receiving a 911 call at around 1:30 a.m.; (2) the Officers were aware of an incident that occurred one week prior where Victim-1 reported to police that Defendant had gone to Victim-1's home with a gun; (3) Defendant denied knowing or speaking to Victim-1 in contradiction to Victim-1's statements; (4) Defendant would not agree to a pat down by the Officers and unzipped his jacket while talking to the Officers; (5) Defendant fled from the Officers after being asked multiple times to let the Officers pat him down for weapons; (6) the Officers apprehended Defendant and placed him in handcuffs after pursuing him; (7) upon immediate return to the scene, Officer Caprara began processing the scene; (8) at the time Officer Caprara began processing the scene, all officers at the scene were unaware of the presence

9

of any weapons; (9) at that time Officer Caprara, upon processing the clothing found in Defendant's vicinity when he was apprehended, found a loaded firearm; and (10) upon finding the loaded firearm, Officer Caprara conveyed to fellow officers standing nearby that there was a loaded firearm in the vicinity. (*Id.*; Exs. A1-A2 at 01:35-51:20; Def.'s Moving Br. 7-8.) Nothing in this recitation of facts, as shown in the BWC footage the Government provided with its opposition, suggests that any of the statements captured in Segment One were made with the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution."[5] *See Davis*, 547 U.S. at 822. Rather, the statements captured on Officer Caprara's BWC demonstrate officers reacting to a dynamic, dangerous situation involving a loaded firearm.[6] *See, e.g.*, *United States v. Robinson*, No. 21-1667, 2022 WL 3666293, at *5 (3d Cir. Aug. 25, 2022) (holding that "[a]dmitting [a] 911 call did not offend [defendant's] Sixth Amendment right to confront a witness against him" as "[t]he 911 caller relayed information in real time about a group of people arguing and a person with a gun displaying a firearm" and the record "unambiguously indicate[d]" that the 911 caller was seeking police assistance and relayed information to do so); *see also United States v. Carothers*, No. 20-31-2, 2024 WL 4581643, at *8 (W.D. Pa. Oct. 25, 2024) (admitting dashcam footage that occurred after a vehicle crash because "the clear primary purpose of all persons audible is to address the ongoing emergency (i.e., the vehicle crash)" and, therefore, "the audio [is] non-testimonial statements, and thus [the statements]

---

[5] The Court notes that Defendant "urges the Court to acknowledge that BWCs are different from the typical stationary security camera, and are more akin to police reports, and must be subject to meaningful cross-examination." (Def.'s Moving Br. 13.) The Court expressly declines this invitation to make such a far-reaching determination and instead has reached its conclusion upon considering the purpose of Officer Caprara's statements based on an objective analysis of the circumstances in this case.

[6] Defendant notably does not provide any case law of analogous or similar situations to help guide the Court in its analysis of the facts in this case. (*See* Def.'s Moving Br. 11-13.)

are admissible"). For these reasons, the Court finds that suppression of Segment One is not warranted.

### b.    Segment Two

The Government argues that the statements "Officer Caprara made during the minute-long interrogation of [Defendant] after his arrest [contained in Segment Two] are necessary to understand [Defendant's] statements, and are thus admissible non-hearsay statements." (Gov't's Opp'n Br. 13.) In Segment Two, Officer Caprara asks Defendant about where he obtained the gun that was found. (*See id.* at 5; Ex. A2 at 01:52:35-53:50.) In this context, Officer Caprara's statements are being offered not for their truth, but rather for context of Defendant's own statements. As such, these statements are admissible because they are not hearsay. *See, e.g., United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) ("[Declarant's recorded] statements were admissible to put [Defendant's] admissions on the tapes into context, making the admissions intelligible for the jury. Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." (citations omitted)). For these reasons, the Court finds that suppression of Segment Two is not warranted.

Accordingly, Defendant's motion to suppress Officer Caprara's BWC footage in its entirety is denied. Of course, to admit the evidence at trial, the Government must otherwise satisfy the evidentiary requirements under the Rules.

### B.    Defendant's Motion to Suppress Firearm (Request Two)

Defendant next seeks to suppress the firearm itself arguing that "[n]o reliable chain of custody was ever established." (Def.'s Moving Br. 14.) The Government argues that it can establish the necessary chain of custody at trial through "Officer Hill (and possibly other officers on scene), who was present and observed Officer Caprara recover the firearm from [Defendant's]

11

jacket" and that "[t]he bottom line is that, at trial, it will be clear that the firearm is what it claims to be[.]" (Gov't's Opp'n Br. 15.)

As previously discussed, the Third Circuit has "long rejected the proposition that evidence may only be admitted if a 'complete and exclusive' chain of custody is established." *Rawlins*, 606 F.3d at 82 (citation omitted). Rather, the Government simply must "'prove a rational basis from which to conclude' that the evidence is what the party claims it to be" and offer sufficient "'evidence from which the trier [of fact] could reasonably believe that an item still is what the [prosecution] claims it to be.'" *Id.* (first alteration in original) (citations omitted). Here, the Government identifies how it can satisfy its burden—it expects to provide adequate testimony through the Officers' BWC footage and testimony from Officer Hill (and possibly other officers) about observing Defendant wearing the jacket that the firearm was in and observing Officer Caprara recovering the firearm from the same jacket. (*See* Gov't's Opp'n Br. 15.) Such testimony, if provided at trial, would be sufficient to establish the chain of custody. *See Rawlins*, 606 F.3d at 82.

Defendant's motion to suppress the firearm is, accordingly, denied. Once again, to admit the firearm as evidence during trial, the Government must otherwise satisfy the evidentiary requirements under the Rules and establish this chain of custody through testimony of its witnesses.

### C.    Defendant's Discovery-Related Requests (Requests Three through Eight)

Defendant also seeks to compel the Government to disclose a variety of discovery-related material. (*See* Def.'s Moving Br. 15-25.) The Court addresses each request in turn.

### *1.    Disclosure of Evidence Pursuant to Rule 404(b) (Request Three)*

Defendant moves to compel the Government's production of Rule 404(b) evidence. (*See* Def.'s Moving Br. 15.) Pursuant to Rule 404(b), the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial" of "any other crime, wrong, or act[.]" Fed. R. Evid. 404(b). Notice under Rule 404 "generally must be provided before trial[, h]owever, 'no specific time limits are stated' in the Rule and 'the reasonableness of the timing . . . depends on the facts of each case.'"[7] *United States v. Li*, No. 16-194, 2017 WL 590275, at *4 (M.D. Pa. Feb. 14, 2017) (second alteration in original) (quoting *United States v. Plaskett*, No. 2007-60, 2008 WL 441930, at *2 (D.V.I. Feb. 12, 2008)); *see also United States v. Edwards*, No. 20-572, 2024 WL 1620311, at *3 (D.N.J. Apr. 15, 2024) ("The Court generally determines the dates for disclosure of Rule 404(b) . . . materials after a final pre-trial conference" and for such evidence, "the Government must provide 'reasonable notice' to the defendant, which courts have defined as seven to ten days before jury selection for trial." (citations omitted)).

Here, "[t]he Government acknowledges the benefits of pretrial disclosure of Rule 404(b) material and [represents that it] will provide [Defendant] with reasonable pretrial notice of its intention to offer such evidence, in accordance with the forthcoming Court order setting pretrial deadlines." (Gov't's Opp'n Br. 16.) Defendant's request, therefore, is premature and is denied on that basis. *See, e.g.*, *United States v. Mangan*, 747 F. Supp. 3d 740, 746-47 (D.N.J. 2024) (rejecting defendant's argument "that fundamental fairness calls for early disclosure of [Rule 404(b)] material" and denying disclosure request as premature).

---

[7] Moreover, this Court's Standing Order 15-2 provides that "[n]o sooner than two weeks following the disposition of pretrial motions, the Court shall . . . schedule a final pretrial conference" and "[i]f the parties have informed the Court that the case should be set for trial, the Court . . . shall set a schedule providing for" certain deadlines, including the Government's production of Rule 404(b) material. D.N.J. Standing Order 15-2 ¶¶ 17, 19.

### 2.    Discovery of All Exculpatory Evidence (Request Four)

Next, Defendant moves this Court to order the Government to disclose all exculpatory or potentially exculpatory evidence. (*See* Def.'s Moving Br. 16-17.) Included in the list of information that Defendant requests the Court order the Government to produce is: (1) "the personnel files of law enforcement officers who participated in this case, whether they are anticipated to testify or not"; (2) Officer Caprara's entire personnel file; (3) "[t]he identity of all officers, detectives[,] and agents involved in the stop, chase, search[,] and arrest of [Defendant] on January 2, 2024"; (4) "[a]ll video and audio recordings related to this investigation and case that ha[ve] not yet been produced, including any video from the police vehicles used on January 2, 2024"; and (5) "[a]ny video, report, request for video[,] or other documentation relating to any surveillance cameras in the vicinity of the stop and arrest location." (*Id.* at 17.)

The Government contends that it: (1) "is well aware of its *Brady* obligations and will promptly disclose to [Defendant] any evidence favorable to him that is material to innocence"; (2) is aware that "its obligation to disclose any exculpatory evidence in its possession under *Brady* is a continuing one"; (3) "is presently unaware of any *Brady* material in its possession or otherwise"; (4) "is aware of its obligation to search for and produce material reflecting adversely on the character, truthfulness, or motivation of any government trial witnesses, often characterized as *Giglio* material"; and (5) will search for and produce such *Giglio* material. (Gov't's Opp'n Br. 17.) The Government, however, takes issue with specific categories of information that Defendant argues must be disclosed, arguing that "[m]ost of this information goes beyond the Government's obligations and is not discoverable." (*Id.* at 17-20.)

Here, the Government has acknowledged its discovery obligations and has represented that it has already produced some of the requested material and otherwise intends to comply with its

obligations. (*See id.*) The Court notes that under *Brady* and its progeny, the prosecution must "disclose evidence 'material to either guilt or to punishment.'" *Pickard v. United States*, 170 F. App'x 243, 246 (3d Cir. 2006) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Evidence is material if its suppression 'undermines confidence in the outcome of trial.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). To the extent Defendant seeks broad categories of material without any indication of how such evidence is material in this case (*see* Def.'s Moving Br. 16-17), such a request is denied, *see Pickard*, 170 F. App'x at 246 (rejecting defendant's *Brady* claim because it was "based on pure speculation of the materiality of th[e] purported evidence" which included personnel records for detectives). Defendant's request is also denied considering the Government's representations about its intended compliance.

### 3.    *Disclosure of Informants (Request Five)*

Defendant next asks that this Court order the Government to disclose certain information "regarding any informants and cooperating witnesses" including "information regarding any cooperator related to this matter, including those who may have been with [Defendant] the night of his arrest and whether he or she has agreed to cooperate with the [G]overnment." (Def.'s Moving Br. 18-19.) Defendant clarifies that this request seeks for the Government "to confirm whether or not the individuals alleged to have been with [Defendant] on the night of on or about January 2, 2024, had been utilized as an informant by the Bureau of Alcohol, Tobacco, Firearms and Explosives, the South Toms River Police Department or any other law enforcement agency[.]" (*Id.* at 20.)

"In order to protect the important role of informants in crime fighting, the Government has a qualified privilege to preserve the anonymity of informants from discovery in criminal matters." *United States v. Anthony*, No. 11-68, 2012 WL 959448, at *2 (D.N.J. Mar. 20, 2012) (citing

*Roviaro v. United States*, 353 U.S. 53, 59 (1957)). This privilege, however, is not absolute and "'[t]he scope of the privilege is limited by its underlying purpose.'" (*Id.* (quoting *Roviaro*, 353 U.S. at 60).) "The Government may be required to disclose an informant's identity when[:] '(1) the [informant's] possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged.'" *United States v. Rivera*, 524 F. App'x 821, 827 (3d Cir. 2013) (quoting *United States v. Jiles*, 658 F.2d 194, 198-99 (3d Cir. 1981)).

Importantly, "[t]he individual seeking disclosure has the burden of establishing the significance of the informant's testimony" and "[t]he usefulness of disclosing the informant's identity must be based on more than mere speculation or hope that disclosure will lead to helpful evidence." *Anthony*, 2012 WL 959448, at *2 (citations omitted); *see also United States v. Bazzano*, 712 F.3d 826, 839 (3d Cir. 1983) ("[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity.").

Here, as the Government argues, Defendant has not met his burden to show that disclosure of any informant's identity is warranted. (*See* Gov't's Opp'n Br. 22); *Jiles*, 658 F.2d at 198-99. Not only does Defendant's request merely speculate as to whether an informant exists in the first place, (*see* Def.'s Moving Br. 20 (seeking "to confirm whether or not the individuals alleged to have been with [Defendant] . . . had been utilized as . . . informant[s]")), Defendant has not otherwise met his burden to establish the significance of the informant's testimony or the usefulness of disclosing any informant's identity, *see Anthony*, 2012 WL 959448, at *2 (citations omitted). The Court, accordingly, denies Defendant's motion to compel the Government to identify any informants, to the extent any such informants exist.

#### 4.    *Production of Statements of Defendant and Expert Reports (Request Six)*

In his next request, Defendant asks the Court to compel the Government to produce Defendant's statements pursuant to Criminal Rule 16(a)(1) and any "reports of examinations and tests and a written summary of any testimony that the [G]overnment intends to use under [Rule] 702, 703, or 705 during its case-in-chief at trial[.]" (Def.'s Moving Br. 21.) Defendant notes that he has "not yet received any such reports or summaries, and the Government should provide them forthwith or be precluded from introducing any such evidence at trial." (*Id.*)

The Government represents that it previously produced materials pursuant to Criminal Rule 16(a)(1), and that Defendant has had the materials for over sixteen months. (Gov't's Opp'n Br. 23.) The Criminal Rule 16(a)(1) materials the Government already produced include: (1) Defendant's texts with Victim-1 in late 2023 and early 2024; (2) Defendant's statements from the night of his arrest; and (3) "certain of his recorded jail calls thereafter[.]" (*Id.*) Defendant's motion to compel the Government's production of materials pursuant to Criminal Rule 16(a)(1) is, therefore, denied as moot.

The Government also "acknowledges its obligations . . . , and will provide [Defendant] with the[] materials" related to expert reports, tests, or summaries "consistent with any scheduling order that the Court will enter in this matter." (*Id.* at 23-24.) The Court, therefore, denies Defendant's request as it relates to "reports of examinations and tests and a written summary of any testimony that the [G]overnment intends to use under [Rule] 702, 703, or 705[,]" (Def.'s Moving Br. 21), as premature.

#### 5.    *Discovery of Information Pursuant to 18 U.S.C. § 3500 (Request Seven)*

Defendant next asks the Court to order the Government to: (1) produce Jencks Act material thirty days before trial; and (2) provide "any Jencks or impeachment materials relating to any

witness . . . immediately." (Def.'s Moving Br. 23.) The Jencks Act requires the Government, upon a motion by a defendant, to produce any statements by witnesses after the witnesses testify at trial. 18 U.S.C. § 3500(a).

The Government represents that it "is aware of, and will comply with, its obligations under the Jencks Act" and further notes that "it is the Government's practice to, when feasible, provide Jencks material in advance of the Jencks Act's directive in order to avoid delays." (Gov't's Opp'n Br. 24-25 (citing *United States v. Bissell*, 954 F. Supp. 841, 871 (D.N.J. 1996) ("Although the disclosure of Jencks material prior to the conclusion of direct examination of the Government's witness cannot be compelled, early disclosure to obviate trial interruptions is encouraged.")).) In light of the Government's representations, and considering the Court has yet to hold a pre-trial conference between the parties, *see Edwards*, 2024 WL 1620311, at *3 ("The Court generally determines the dates for disclosure of . . . Jencks Act materials after a final pre-trial conference between the parties."), Defendant's motion is denied as premature.

### 6.    *Preservation of Government's Rough Notes (Request Eight)*

In the last of his discovery-related requests, Defendant seeks to compel the Government "to preserve and retain three categories of documents: (1) contemporaneous rough notes taken by [G]overnment agents of meetings, conversations[,] or interviews during the course of its investigation; (2) the agent[s'] subsequently prepared drafts of their reports of these incidents[;] and (3) the final reports signed by the agents." (Def.'s Moving Br. 24.) The Government represents that "[t]he officers and agents involved in the prosecution of this case have been advised of their obligation to preserve" certain documents and that "the Government will preserve and retain such material in accordance with [its] . . . obligations[.]" (Gov't's Opp'n Br. 25.) Considering the

18

Government's representations, Defendant's motion to compel preservation of such material is moot and is, therefore, denied on that basis.

####    D.    Defendant's Request to Make Further Pre-Trial Motions (Request Nine)

Lastly, Defendant requests "the right to make additional pretrial motions if additional facts and circumstances warrant." (Def.'s Moving Br. 26.) The Government acknowledges that "[c]ircumstances may arise that would make it appropriate and necessary for additional motions to be filed by [Defendant] and the Government in the future." (Gov't's Opp'n Br. 26.) The Government, therefore, does not object to permitting for additional motions so long as those motions are "limited to issues raised by future Government disclosures or otherwise newly discovered evidence." (*Id.*) The Court agrees that the disclosure of additional materials as trial approaches could require additional motions by the parties. As such, Defendant's request is granted insofar as the parties will be permitted to make further pre-trial motions, if necessary, provided that the motions are not based on discovery materials previously disclosed and are in accordance with any pre-trial scheduling order that the Court issues.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _____3/4/_____, 2026