NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDY HAYWARD. | Criminal Action No. 24-423 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon the motions *in limine* filed by the United States of America (the "Government") and Defendant Randy Hayward ("Defendant"). (ECF Nos. 34, 38.) Both the Government and Defendant filed oppositions. (ECF Nos. 40, 41.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court grants in part, denies in part, and reserves in part the parties' motions.

I.      **BACKGROUND**

The parties are intimately familiar with the factual background in this matter. The Court, therefore, will not recite any facts in this Memorandum Opinion.[1]

II.     **LEGAL STANDARD**

"District courts have 'wide discretion in determining the admissibility of evidence under the Federal Rules [of Evidence].'"[2] *Supernus Pharms., Inc. v. Ajanta Pharma Ltd.*, No. 21-6964,

---

[1] For a recitation of background facts in this matter, the parties are directed to the Court's March 4, 2026, Memorandum Opinion. (*See generally* Mar. 4, 2026, Mem. Op., ECF No. 31.)

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Evidence.

2023 WL 4866348, at *1 (D.N.J. July 31, 2023) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine [disputes] of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). Importantly, "[e]vidence should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on *all* potential grounds." *Supernus*, 2023 WL 4866348, at *1 (second emphasis added) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground[.]" *Id.* (citation omitted). In the event that evidence is deemed admissible or inadmissible, a trial court's *in limine* rulings are "subject to change [as] the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer" prior to trial. *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

## III.  DISCUSSION

The Court's preliminary *in limine* rulings are discussed below. The Court will address each motion in turn, beginning with the Government's motions, and then turning to Defendant's motions.

### A.  The Government's Motions *in Limine*

The Government brings two motions *in limine*. (*See generally* Gov't's Mot., ECF No. 34.) The Court will address each motion below.

#### 1.  Evidence Concerning Defendant's Interactions with Victim-1

The Government first seeks to introduce certain evidence pursuant to Rule 404(b) "for the proper purpose of establishing [Defendant's] motive for possessing the firearm." (*Id.* at 6.) The

2

404(b) evidence that the Government seeks to introduce includes evidence of Defendant's "extortionate conduct, including the fact that he was at Victim-1's residence less than a week before his arrest and brandished a firearm there[.]" (*Id.*)

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence[, however,] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "[T]he party seeking to admit evidence under Rule 404(b)(2) bears the burden of demonstrating its applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). "There are four distinct steps that must be taken before evidence is admissible for a non-propensity purpose under Rule 404(b)(2)." *Id.* "First, the proponent must identify a proper 404(b) purpose for admission (such as knowledge or intent) that is 'at issue' in, or relevant to, the case." *Id.* Next, "the proponent must . . . explain how the evidence is relevant to that [identified] purpose." *Id.* At step three, the court must determine "whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence" under Rule 403. *Id.* at 277 (citing *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992)). As part of the last step, "if the defendant requests it, the court must provide a limiting instruction, which advises the jury that the evidence is admissible for a limited purpose and may not be considered in another manner." *Id.* (citing *United States v. Davis*, 726 F.3d 434, 445 (3d Cir. 2013)).

The Court finds that the Government has identified a non-propensity purpose because the evidence concerning Defendant's interactions with Victim-1 are being proffered "to establish [Defendant's] motive for possessing the firearm outside the home of Victim-1 and to provide

3

necessary background information about the relationship between [Defendant] and Victim-1." (Gov't's Mot. 9.) As articulated by the Government, for multiple days leading up to Defendant's arrest, he threated Victim-1 and sought to obtain money from Victim-1. (*See id.* at 10-11.) This evidence provides an explanation as to why Defendant would have a weapon in his possession outside of Victim-1's house the night he was arrested. (*See id.* at 11.) Such context shows that this evidence is not for a propensity purpose, but rather to provide a motive for Defendant's actions on the night of his arrest.

Defendant argues that "the charged offense is simple possession, [and] motive adds little probative value while carrying substantial risk of unfair prejudice." (Def.'s Opp'n Br. 5, ECF No. 41.) The Court disagrees. This evidence is highly probative of why Defendant had a gun, and the Government has represented that it is "willing[] to forego the introduction of evidence regarding [Defendant's] April 2022 arrest—which further explains *why* [Defendant] extorted Victim-1 in December 2023—as well as any reference to [Defendant's] prior period of incarceration discussed within the text messages." (Gov't's Mot. 12.)

The explanation of Defendant's motive and the surrounding context of his arrest, without the evidence related to Defendant's 2022 conviction, appears to outweigh the prejudice to Defendant. Moreover, should the Court allow the introduction of such evidence, it will provide a limiting instruction at the request of Defendant. Without the surrounding testimony and full context of how the Government seeks to introduce this evidence, however, the Court must reserve on its ruling at this time. Defendant may raise his objection to the introduction of such 404(b) evidence at trial. The Court notes, though, that the Third Circuit has allowed evidence related to a purported motive in § 922(g) cases before and based on the above, the Government has identified a non-propensity purpose (i.e., a motive) for such evidence. *See, e.g., United States v. Lee*, 612

F.3d 170, 187 n.19 (3d Cir. 2010) ("Motive is one of the permissible purposes listed in Rule 404(b) not because the 'why' helps solve a crime, but because it is highly relevant to show . . . a motivation to commit the crime for which [defendant] is being charged. In a case like this, where [defendant] is asserting that he never had a gun on the day in question, it is important to know that he had a personal motivation to possess a gun."); *United States v. Foster*, No. 15-21-1, 2016 WL 1572848, at *2 (D. Del. Apr. 18, 2016) ("Accordingly, testimony concerning the events of the day before the arrests is admissible for the proper Rule 404(b) purpose of proving motive, because it establishes a potential reason for [d]efendants to each possess a firearm."), *aff'd*, 891 F.3d 93 (3d Cir. 2018).

### 2.    *Admission of Certain Business Records*

The Government next seeks a ruling in advance of trial that certain evidence is admissible as self-authenticating business records pursuant to Rules 803(6) and 902(11). (Gov't's Mot. 14-15.) In particular, the Government represents that it seeks to introduce records through a Rule 902(11) certification that were produced to it by Block, Inc., the corporate operator of CashApp, (the "CashApp Records") without the testimony of a records custodian and that "because the Government has provided the defense with [the] proper notice, the Court should admit the CashApp Records as self-authenticating[.]" (*Id.*) The Government cites to the CashApp Records as its exhibits GX202A-E.[3] (*Id.* at 14.)

Defendant argues that the Court should not find that the CashApp Records are admissible as self-authenticating records for multiple reasons, including that: (1) "[w]hile the platform's system-generated data (timestamps and amounts) may be admissible as business records,

---

[3] As an initial matter, the Court notes that exhibits GX202C and GX202D appear to be blurry photos of licenses of Defendant and Yanna Ventura. The Court fails to see how those documents constitute the type of payment records that should constitute business records under the Rules.

user-created content like payment descriptions, third-party banking integration data, notes, inputted identifiers, and messages would require separate hearsay exceptions"; (2) introduction of CashApp Records related to Yanna Ventura, a third party, "would substantially prejudice [Defendant] by introducing irrelevant, unreliable, and hearsay-laden material tied to uncharged conduct"; and (3) "the Government has not demonstrated that the records themselves are relevant to the charged firearm possession offense rather than to the uncharged extortion scheme." (Def.'s Opp'n Br. 11-17.)

Rule 803(6) provides an exception to the rule against hearsay for certain records, if those records meet the following requirements:

> (A) The record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Moreover, Rule 902(11) in relevant part provides that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian . . ." is self-authenticating and "require[s] no extrinsic evidence of authenticity in order to be admitted[.]" Fed. R. Evid. 902(11). To meet this exception, "the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them." *Id.*

Here, the CashApp Records contain information that expands beyond typical "records verif[ying] the dates and amounts of certain deposits[.]" *United States v. Browne*, 834 F.3d 403,

6

436 (3d Cir. 2016). Rather, the CashApp Records also contain annotations of the sections of the logs, "statement description[s]," and other categories of information that appear to be pulled from third parties. (*See, e.g.*, GX202E.) Because the Government purportedly seeks to verify information contained in the CashApp Records that comes from third parties (like payment descriptions and third-party banking data), and the proposed certification does not adequately verify such information, the Government's motion is denied without prejudice.[4] *See, e.g., Browne,* 834 F.3d at 436 ("If the Government here had sought to authenticate only the timestamps on the Facebook chats, the fact that the chats took place between particular Facebook accounts, and similarly technical information . . . , the records might be . . . admitted under Rules 902(11) and 803(6)."); *United States v. Furst,* 886 F.2d 558, 572 (3d Cir. 1989) (finding district court erred in admitting bank records as business records under Rule 803(6) where "significant portions of the[] documents" were not independently verified).

### B.    Defendant's Motions *in Limine*

Defendant brings six motions for the Court's consideration, seeking: (1) to require the Government to disclose *Brady* and *Giglio* material; (2) admission of impeachment evidence of Officer Caprara; (3) suppression of cumulative, descriptive, or prejudicial references to Defendant's prior convictions "beyond the narrow proof necessary to establish the status element"; (4) suppression of extortion evidence of "alleged debt collection, threats, or other uncharged misconduct"; (5) suppression of testimony and body-worn camera ("BWC") footage "regarding the alleged search of the jacket and Defendant's alleged statements where no testifying witness has personal knowledge"; and (6) suppression of cell-phone text messages "purportedly authored

---

[4] Should the Government seek to admit the CashApp Records through another avenue during trial, the Court will entertain at that time any arguments from Defendant regarding the relevance of such documents.

by Defendant absent proper authentication[.]" (*See generally* Def.'s Mot., ECF No. 38.) The Court addresses each motion in turn below.

### 1.    *Disclosure of Brady and Giglio Material*

Defendant first seeks: (1) disclosure of "all *Brady* and *Giglio* material relating [to] Victim-1 and all other testifying witnesses[;] and [(2)] permission to introduce such material at trial for purposes of impeachment, reliability assessment, and to challenge the Government's proof of possession." (Def.'s Moving Br. 3, ECF No. 38-1.)

Defendant has previously asked this Court to order the Government to produce all *Brady* and *Giglio* material. (*See* Def.'s Omnibus Mot. 16-17, ECF No. 26-1.) As the Court noted in its March 4, 2026, Memorandum Opinion, Defendant's request was denied, in part because of "the Government's representations about its intended compliance." (Mar. 4, 2026, Mem. Op. 15.) Now, in response to Defendant's motions *in limine*, the Government once again represents that: (1) it "is well aware of its *Brady* obligations and will promptly disclose any evidence favorable to [Defendant] that is material to innocence[;] and [(2)] [it] is aware of its obligation to search for and produce material reflecting adversely on the character, truthfulness, or motivation of any government trial witnesses[.]" (Gov't's Opp'n Br. 1, ECF No. 40.) The Government also represents that it is still currently "unaware of any *Brady* material in this matter, let alone *Brady* material pertaining to Victim-1."[5] (*Id.*) Given the proximity to trial, the Court will grant Defendant's motion. To the extent such *Brady* and *Giglio* material exists, is in the Government's

---

[5] The Court further notes that Defendant brought this motion before the Government's April 6, 2026, deadline for producing *Giglio* material. (*See* Scheduling Order, ECF No. 35.) Should the Government have failed to meet this deadline, Defendant may raise this concern with the Court in advance of trial.

possession, and has not yet been produced by the Government, the Government is directed to immediately produce it to Defendant to comply with its obligations.

Defendant does not identify the specific material he seeks to introduce "for purposes of impeachment, reliability assessment, and to challenge the Government's proof of possession." (*See* Def.'s Moving Br. 3.) The Court, therefore, reserves any ruling on the admissibility of any *Brady* or *Giglio* material at this time.

### 2.    *Admission of Impeachment Evidence of Officer Caprara*

Defendant next seeks a ruling on the admissibility of certain impeachment evidence related to Officer Caprara, including an official Internal Affairs ("IA") investigation and related testimony from Officer Hill, who is expected to testify. (Def.'s Moving Br. 4-7.) The Government opposes this request in part because it argues that Third Circuit precedent, *United States v. Saada*, 212 F.3d 210 (3d. Cir. 2000), "permits [Defendant] to examine Officer Hill regarding her personal knowledge—but without the introduction of extrinsic evidence—of the facts underlying the IA investigation, to the extent otherwise permissible under the [Rules]." (Gov't's Opp'n Br. 4.)

Rule 608(b) provides, in part, that:

> extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). Rule 806, however, provides, in relevant part, that "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806.

The Third Circuit has held that "Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify." *Saada*, 212 F.3d at 221. "[T]he unavailability of the declarant[, however,] will not always foreclose using prior misconduct as an impeachment tool because the witness testifying to the hearsay statement may be questioned about the declarant's misconduct—without reference to extrinsic evidence thereof—on cross-examination. . . ." *Id.*

Here, consistent with *Saada* and the Government's position, the Court agrees that Defendant is permitted to cross-examine Officer Hill regarding the underlying facts of the IA investigation without the introduction or reference to the extrinsic evidence itself. *See id.*; Fed. R. Evid. 608(b), 806. To the extent that Defendant seeks to introduce other extrinsic reports or evidence of Officer Caprara's disciplinary issues,[6] such a request is denied. *See Saada*, 212 F.3d at 221.

### 3. *Suppression of Defendant's Prior Convictions Beyond the Narrow Proof Necessary to Establish the Status Element*

In his next motion, Defendant asks this Court to prohibit the use of words "felon" or "felony conviction" in addition to limiting the Government's introduction of evidence related to Defendant's prior convictions. (Def.'s Moving Br. 8-15.)

First, Defendant has offered no support for his argument that the Government should be prohibited from using the words "felon" or "felony conviction." (*See id.* at 8-10.) In fact, as the Government has pointed out (*see* Gov't's Opp'n Br. 6-7), the Model Jury Instructions for a felon in possession of a firearm charge (18 U.S.C. § 922(g)) use the term "felon," *see* Model Jury

---

[6] In a single footnote citing two exhibits and without any further argument, Defendant states that "[t]here are also reports (not produced by the Government) that [Officer] Caprara had additional disciplinary issues, including sleeping on the job." (Def.'s Moving Br. 6 n.1 (citing Exs. A, B, ECF Nos. 38-2, 38-3.)

Instruction § 6.18.922G ("Count (*No.*) of the indictment charges the defendant (*name*) with being a **felon** in possession of a firearm[.] . . . First: That (*name*) has been convicted of a **felony** . . ." (emphasis added)). Defendant's request that the Court prohibit the Government from using the terms "felony" or "felony conviction" is, therefore, denied. The Court will, however, entertain a request for a limiting jury instruction. *See, e.g.*, *United States v. Higdon*, 638 F.3d 233, 243 (3d Cir. 2011) (recognizing "prejudice inherent in any attempt to inform a jury that a defendant has a prior criminal conviction" but noting that where a "prior conviction is not merely a consequential fact [but] is *an element of the crime charged* . . . any prejudice results from the requirements of the statute itself, and is best addressed by an appropriately forceful limiting instruction" (emphasis in original)), *abrogated on other grounds*, *United States v. Adams*, 36 F.4th 137 (3d Cir. 2022).

Second, Defendant seeks to limit the Government's introduction of evidence regarding Defendant's prior convictions despite acknowledging that the parties may enter into a stipulation regarding such prior convictions. (*See* Def.'s Moving Br. 10-13.) Defendant admits that he "anticipate[s] that [he] may stipulate to the status element" and the Government represents that "[a]ssuming [Defendant] enters into the Government's previously offered stipulation regarding the prior-conviction element, the Government intends to refer generally to . . . [D]efendant's prior felony convictions in a judicious manner . . . ." (Def.'s Moving Br. 10; Gov't's Opp'n Br. 7.) In light of these representations, the Court will reserve its ruling on this dispute at this time. Should Defendant not agree to the proposed stipulation, the Court will revisit the parties' arguments.

### 4.    *Suppression of Alleged Extortion Scheme*

Defendant further seeks to suppress all evidence of an "extortion scheme" which includes evidence of "alleged threats, extortion, and prior firearm brandishing[.]" (Def.'s Moving Br. 15-20.) As discussed above in the context of the Government's motions *in limine*, the Court is

reserving its ruling on this issue at this time. Defendant may raise his objection to the admission of purported Rule 404(b) evidence during trial as the Government seeks to admit such evidence.

### 5. Suppression of BWC Footage and Testimony regarding Defendant's Statements

Defendant next argues that certain BWC footage should be excluded because the Government does not have a witness with personal knowledge of the BWC footage containing Defendant's own statements or of Officer Caprara's search of the jacket. (*See* Def.'s Moving Br. 20-24.) The Court has already rejected Defendant's arguments regarding potential exclusion of the BWC footage on authentication grounds. (*See* Mar. 4, 2026, Mem. Op. 4-11.) The Court incorporates by reference its analysis from its March 4, 2026, Memorandum Opinion (*see id.*), and once again reiterates that the Government may authenticate Officer Caprara's BWC footage through: (1) Officer Hill's testimony, as even though she "was not present for the entirety of the footage that Officer Caprara's BWC filmed, [she] can still provide testimony that the BWC footage 'is what it is claimed to be'" (*id.* at 5 (quoting Fed. R. Evid. 901(b)); and/or (2) through its chain of custody (*id.* at 6-7). Defendant's request to exclude Officer Caprara's BWC footage is, once again, denied.

### 6. Suppression of Text Messages without Proper Authentication

Lastly, Defendant argues that "the Government must be required to authenticate the [text] messages [authored by Defendant] with competent evidence before they may be admitted or referenced at trial" because such messages are "not self-authenticating[.]" (Def.'s Moving Br. 24-25.) The Government agrees that text messages "are not self-authenticating" and represents that it "will 'produce evidence sufficient to support a finding that [Defendant's text messages are] what the [Government] claims' they are." (Gov't's Opp'n Br. 18 (citing Fed. R. Evid. 901(a)).)

In light of the Government's agreement and representations, Defendant's motion is denied without prejudice. Of course, Defendant may raise an objection during trial if the Government has not produced competent evidence to authenticate the text messages at issue.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court grants in part, denies in part, and reserves in part the parties' motions. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: ___4/8/26___